DIGGINS, P. J.,
— Plaintiff, Local 1400, Chester City Fire Fighters Association (affiliated with the International Association of Fire Fighters, AFL-CIO), commenced the instant action in mandamus against defendants, the City of Chester, the Mayor, and Councilmen thereof. In its complaint, plaintiff alleged, inter alia, that it represented more than 50 percent of the paid drivers of fire fighting equipment in the Qty of Chester; that it was authorized to bargain collectively with the City of Chester concerning wages, conditions of employment and other benefits; and that it was authorized to take such other action as might be required to secure to the paid fire drivers all of the rights and benefits accruing under the Act of June 24, 1968 (Act 111) 43 PS §217.1-217.10. Defendants declined to enter into any negotiations, alleging that the paid fire drivers were employes of five independent volunteer fire companies located in the City of Chester and, as such, beyond defendants’ control.
Defendants attempted to join each of the five independent volunteer fire companies (Felton Fire Company No. 3, Good Will Fire Company No. 2, Hanley Hose Company No. 1, Moyamensing Hook & Ladder Company No. 1, and Franklin Fire Company No. 1) as additional defendants in the within action. The volunteer fire companies filed preliminary ob *36 jections to the attempted joinder, alleging that they were not political subdivisions subject to the aforesaid Act of 1968. These objections were sustained by order of this court. Subsequently, each of the volunteer fire companies intervened as parties pursuant to Pennsylvania Rule of Civil Procedure 2327(4).
The hearing was held on September 23, 1970; thereafter, briefs and requested findings of fact and conclusions of law were submitted on behalf of the respective parties. The matter is now ripe for determination.
FINDINGS OF FACT
1. Local 1400, Chester City Fire Fighters Association, plaintiff herein, is a labor organization, affiliated with the International Association of Fire Fighters, AFL-CIO.
2. The defendants are the mayor and the councilmen of the City of Chester, and the City of Chester, a third class city of the Commonwealth of Pennsylvania, and, as such, a political subdivision of said Commonwealth
3. The named intervenors are independent volunteer fire companies, each established as nonprofit corporations under the laws of the Commonwealth of Pennsylvania.
4. The City of Chester purchases, owns, maintains and repairs the fire fighting equipment which is utilized by the volunteer fire companies, which equipment is housed in buildings which are owned by the volunteer fire companies.
5. The City of Chester pays rent to the volunteer fire companies for the housing of the said fire fighting equipment.
6. The City of Chester appropriates money, annually, to cover the expenses of the operation of the fire houses of the volunteer fire companies, including the payment of salaried employes.
*37 7. The chief engineer and the assistant chief engineers (hereinafter referred to as the “fire chief” and the two “assistant fire chiefs”), are employes of the City of Chester and are on the payroll of the City of Chester.
8. The Chester City Code of 1956, and more particularly, Chapter 7 —Fire Department thereof, is in effect and is binding on the volunteer fire companies.
9. The Chester City Code, and, more particularly Chapter 7 — Fire Department thereof, sets forth and describes the manner and means by which the City of Chester, through its fire chief and assistant fire chiefs, supervises and controls the volunteer fire companies, the paid drivers and the other fire fighters thereof, as well as the manner and means of fighting fires.
10. The City of Chester, through its city council, acts on the budgets submitted by the volunteer fire companies and has the power to adopt or modify the budgets submitted by the volunteer fire companies.
11. In adopting or modifying the budgets submitted by the volunteer fire companies, the City of Chester sets the wages and salaries of the paid drivers.
12. The City of Chester is the source of compensation of the paid drivers of the fire fighting equipment.
13. The City of Chester has a group policy with the Hanover Life Insurance Company of Worcester, Mass.; the paid drivers of the fire fighting equipment are covered by this group policy, together with all other employes of the City of Chester.
14. The complaint filed in this cause has attached thereto a petition which states, inter alia:
“We, the undersigned, who are employed as drivers of the fire fighting equipment of Chester, Pennsylvania, constitute more than fifty per cent of the drivers of the fire fighting equipment of Chester, Pennsylvania; we, the undersigned, have designated Local 1400, Chester *38 City Fire Fighters Association, affiliated with the International Association of Fire Fighters, AFL-CIO, which is a labor organization, as our representative to bargain collectively with the City of Chester, Pennsylvania concerning the terms and conditions of the employment of the drivers of the fire fighting equipment of Chester, Pennsylvania, including compensation, hours, working conditions, retirement, pensions and other benefits, as well as the right to an adjustment and settlement of our grievances or disputes in accordance with the terms of Act No. Ill, approved June 24,1968,43 Purdon’s 217.1-217.10.”
The above-described petition contains the original signatures of 30 paid drivers of the fire fighting equipment of the City of Chester.
15. After numerous conferences with the court, the parties hereto agreed to utilize the Pennsylvania Labor Relations Board to ascertain whether plaintiff represented 50 percent or more of the paid drivers. The Pennsylvania Labor Relations Board conducted an election by secret ballot on July 22, 1970, among the paid drivers of the fire fighting equipment of the City of Chester. Forty-two ballots were cast by regular full-time drivers, and two ballots were cast by part-time drivers. The two ballots of the part-time drivers were challenged by the Pennsylvania Labor Relations Board for cause and placed in separate envelopes, sealed and segregated, thus leaving 42 ballots to be accounted for and canvassed. Of the 42 ballots opened and canvassed, 26 ballots were cast in favor of representation by Local 1400 and 16 ballots were cast against said representation. Although requested, the Pennsylvania Labor Relations Board did not return a count of the election in each specific Volunteer Fire Company.
DISCUSSION
The instant matter raises two basic issues for determination, viz.:
*39 (1) Is the City of Chester the employer of the paid drivers of fire fighting equipment in the City of Chester under the Act of June 24, 1968 (Act 111) 43 PS §217.1-217.10?
(2) Has plaintiff been properly designated as the collective bargaining agent of the paid drivers of the fire fighting equipment in the City of Chester under the Act of 1968, supra?
For the reasons hereinafter set forth, the undersigned is of the opinion that both of the issues here presented must be resolved in the affirmative.
An analysis of the Act of 1968, supra, discloses that the legislature intended to prohibit strikes by policemen and firemen while according to them the right to have their grievances resolved by compulsory (and final) arbitration in the event that amicable agreement could not be achieved. Pertinently, section 1 of the Act of 1968, supra, 43 PS §217.1, provides:
“Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.”
Significantly, it is to be noted that the defendants, City of Chester, its Mayor and Councilmen, presented no evidence in light of the decision of the Supreme Court of Pennsylvania in Gremminger v. Eyre, 417 Pa. 461. Although the court, in Gremminger, supra, was concerned with the Act of June 30, 1947, P. L. 1183, 43 PS §215.1, et seq., the facts and issues therein presented were, in essence, similar to the circumstances *40 here in question. In Gremminger, supra, the court held that the paid fire drivers of the City of Chester were public employes under the Act of 1947, supra, which prevented public employes from striking and provided for the establishment of a grievance panel. Both acts, 1947 and 1968, were intended to seek the same objectives, viz. (1) the prohibition of strikes by policemen and firemen, and (2) the establishment of a grievance procedure to resolve grievances. Basically, the Act of 1947 attempted to accomplish the latter objective through advisory opinions of grievance panels; the Act of 1968, on the other hand, attempted to accomplish the latter objective, if required, through compulsory (and final) arbitration. No distinction in principle is evident between the issues raised in Gremminger, supra, and those here presented. Hence, it is the opinion of the undersigned that Gremminger v. Eyre, supra, controls and governs the instant case. In its opinion, the court concisely stated, at pages 462-63:
“In Steffy v. Reading, 353 Pa. 539, 46 A. 2d 182 (1946), we held that a paid driver of a volunteer fire company constituting part of the fire department of a third class city was not an employee of the city hence not entitled to the civil service protection provided by the applicable statute. The criteria necessary for that determination are completely different and distinct from the considerations involved in the determination of whether the drivers of fire-fighting equipment owned, maintained and repaired by a city of the third class are employees of the city entitled to the benefits and restrained by the obligations of the Act of June 30, 1947, P. L. 1183, 43 PS §215.1. The Act of 1947 accomplishes two basic objectives: (1) it prevents public employees from striking and (2) it provides for the establishment of a panel to be set up to hear the grievances of the public employees.
*41 “Plaintiffs here seek to require by mandamus the establishment of the provided for grievance panel which defendant-city has refused to establish, maintaining that since the drivers are not ‘public employees’ they have no rights under the Act. The lower court sustained the city’s position and refused the writ, dismissed the action and entered judgment for defendant-city. We reverse.
“The occasion and necessity for the Act of 1947, together with the stipulations, testimony and exhibits filed before the lower court showing the extent of the City of Chester’s control over the employment and dismissal of the plaintiffs, the supervision exercised over their fire-fighting duties and the source of their compensation convince us that for the purposes of the Act of 1947 they are ‘public employees’ of the City of Chester and as such are entitled to seek redress of their grievances by resort to the Act of 1947.”
Moreover, the Findings of Fact, hereinabove set forth, contain the necessary factual indicia required to render the Act of 1968, supra, applicable to the instant matter. The source of compensation of the paid fire drivers is the City of Chester. The City of Chester purchases, owns and maintains the fire fighting equipment, and appropriates money to cover the expenses of firehouse buildings as well as rent for the housing of its fire equipment. Moreover, the fire chief and his two assistants, who are unquestionably employes of the City of Chester, supervise and control various aspects of the volunteer fire companies, the paid fire drivers and other fire companies, as well as the manner and means of fighting fires at the scenes thereof. These same officers have the right to bring about the suspension or expulsion of a paid fire driver for nonperformance of duties at the scene of a fire. Other analogous factors are contained in this record, *42 all of which, when combined with the factors and circumstances hereinabove set forth, lead to the conclusion that the subject paid fire drivers are “public employes” within the intendment of the Act of 1968, supra.
The volunteer fire companies advance four basic contentions. First, they allege that they were not parties in Gremminger, supra. This is a distinction without substantive effect. The facts here presented were similar to those before the court in Gremminger, supra; as aforesaid, the two cases are indistinguishable from the standpoint of principle. Second, the volunteer fire companies point to certain factual circumstances which might, under other circumstances, tend to support a conclusion that the paid fire drivers are employes of the various companies. However, Gremminger, supra, patently holds that, for the purpose here in question, the paid fire drivers are employes of the City of Chester. Third, a question is raised concerning the fact that the Pennsylvania Labor Relations Board did not, although requested, return a count of the election in each specific company. Gf course, the overall count was 26- — 16 in favor of plaintiff’s representation. Further, concluding, as aforesaid, that the paid fire drivers are employes of the City of Chester, no further or detailed count is necessary or required. Fourth, certain of the companies allege that the instant matter is moot by virtue of the enactment of the Act of July 23, 1970 (Act 195). The undersigned disagrees, since the Act of 1970, supra, did not contain a specific repealer of the Act of 1968, supra, nor can an implied repealer be inferred therefrom. On the contrary, section 301(2) of the Act of 1970 specifically excludes from the definition of “public employee” or “employee” those employes covered by the Act of 1968, supra, and thus preserves, as fully effective, the said Act of 1968.
*43 The second issue herein raised, viz., plaintiff’s designation as the collective bargaining agent, requires little discussion. The petition attached to the complaint as well as the results of the election conducted by the Pennsylvania Labor Relations Board lead to the unequivocal conclusion that plaintiff has been properly designated as the collective bargaining agent of the paid fire drivers of the City of Chester. No evidence, contrary to the above, has been offered.
CONCLUSIONS OF LAW
1. Under the Act of 1968, supra, the paid drivers of the fire fighting equipment of the City of Chester are employes of the City of Chester.
2. Plaintiff, Local 1400, a labor organization, has been designated by 50 percent or more of the paid drivers of the fire fighting equipment of the City of Chester, as their representative to bargain collectively with the City of Chester concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits.
3. The City of Chester is obligated, under the Act of 1968, supra, to bargain collectively with Local 1400 concerning the terms and conditions of the employment of the paid drivers of the fire fighting equipment of the City of Chester.
DECREE
And now, March 8, 1971, upon consideration of the record as well as briefs filed on behalf of the respective parties, it is ordered, adjudged and decreed that the City of Chester, Pa., be and the same is herewith directed to bargain collectively with plaintiff, Local 1400 (Chester City Fire Fighters Association, affiliated with the International Association of Fire Fighters, AFL- *44 CIO) concerning the terms and conditions of employment of the paid drivers of the fire fighting equipment of the City of Chester in accordance with the Act of 1968, supra, provided further, however, that said collective bargaining and the results thereof shall be prospective in nature and shall be first applicable to the fiscal year of the City of Chester commencing January 1, 1972.